| | |
|---|---|
| FELICIA COOPER, GARY SELF, CHARLES MITCHELL, CHARLES RIGGS, and PEGGY LONG, individually and on behalf of all others similarly situated, | Case No.: 1:25-cv-00130-TRM-CHS |
| | Judge: Hon. Travis R. McDonough |
| Plaintiffs, | Magistrate Judge: Hon. Christopher H. Steger |
| v. | Class Action |
| NATIONWIDE RECOVERY SERVICE, INC. | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## I.      INTRODUCTION

On October 16, 2025, Plaintiffs Felicia Cooper, Gary Self, Charles Mitchell, Charles Riggs, and Peggy Long, ("Plaintiffs") individually and on behalf of all others similarly situated, filed their Amended Consolidated Class Action Complaint (Doc. No. 67) ("Compl.") against Defendant Nationwide Recovery Service, Inc. ("NRS") alleging that NRS failed to safeguard the highly sensitive private information of Plaintiffs and Class Members. Compl. ¶ 1. NRS is a Tennessee-based collections agent that provides customer service, collections, recovery management, and other financial services to clients across numerous industries. *Id.* ¶¶ 3, 13. In order for NRS to perform its collection services, NRS oversees, manages, and protects the highly sensitive personal information of its clients' patients. *Id.* ¶ 19. Plaintiffs' and Class Members' healthcare providers require their patients to provide a litany of highly sensitive personally identifiable information ("PII") and personal health information ("PHI"), including full names, dates of birth, Social Security numbers, driver's license or

1

state ID numbers, appointment information, and health insurance information (collectively, "Personal Information"), as a condition and in exchange for receiving medical treatment and related services. *Id.* ¶¶ 25, 26. Accordingly, Plaintiffs' and Class Members' healthcare providers share the Personal Information they receive with NRS in connection with NRS performing its contracted services. *Id.* ¶ 23-25. NRS maintains the Personal Information within its computer network and systems. *Id.* ¶¶ 19, 26. This Personal Information is undeniably valuable, and NRS has a non-delegable duty as a party storing sensitive healthcare information to safeguard it from unauthorized access and disclosure. *Id.* ¶¶ 22, 193-195, 198, 207, 212, 222-226, 253. NRS should have known of the foreseeable harm that would occur to Plaintiffs and Class Members if it failed to observe this duty – which it did here, as admitted in its own notice to Plaintiffs. *Id.* ¶¶ 22, 105, 119, 148, 176, 194, 210, 216, 226. Specifically, between July 5, 2024 and July 11, 2024, an unknown third-party gained access to NRS's systems where the aforementioned Personal Information was stored, and proceeded to exfiltrate such information ("Data Breach"). *Id.* ¶ 30. Plaintiffs have already experienced certain fraud, resulting from the Data Breach, including identity theft committed against them and instances where Plaintiffs have experienced a significant uptick in spam calls, emails, and texts. *Id.* ¶¶ 74, 84, 233. As a result, Plaintiffs have suffered real injuries-in-fact and are at imminent risk of further harm, thereby establishing their standing to pursue this litigation.

As Plaintiffs' counterarguments and the case law cited herein show, NRS's position hails from an old list of recycled and fact-intensive arguments that consistently fail at the motion to dismiss stage. The arguments ignore well-pled allegations of misuse, including, but not limited to – spam texts, calls, and emails, and instances of actual misuse and fraud, stemming from the current, imminent, and ongoing risk of misuse, as alleged in Plaintiffs' Complaint. In addition, Plaintiffs adequately allege cognizable harms and establish that NRS had both contractual and statutory duties to sufficiently protect the sensitive Personal Information in its possession, which it failed to do. As such, Plaintiffs

2

have standing to pursue this litigation, each of their causes of action are well-pled, and NRS's motion to dismiss should be denied in its entirety.

## II. FACTUAL BACKGROUND

### A. NRS Collects and Promises to Safeguard Plaintiffs' Personal Information

In the course of providing customer service, collections, recovery management, and other financial servicing to clients across numerous industries, NRS requires the collection of highly sensitive Personal Information, including but not limited to its clients' patients' full names, addresses, dates of birth, Social Security numbers, driver's license or state ID numbers, medical information, and health insurance information. *Id.* ¶¶ 3, 19. Plaintiffs trusted NRS would adequately safeguard their Personal Information and would not have entrusted it to NRS had they known NRS would not implement the necessary precautions to secure it. *Id.* ¶¶ 42, 54, 67, 80, 94, 102. However, between July 5, 2024 and July 11, 2024, NRS failed to meet its obligations, as demonstrated by the Data Breach perpetrated by an unknown third-party, which resulted in the compromise – and subsequent misuse – of Plaintiffs' and Class Members' Personal Information. *Id.* ¶¶ 30-38, 74, 83-84.

### B. NRS Violated its Duties

As evidenced by the Data Breach, NRS failed to adhere to industry standards relating to data security and, in doing so, breached both its statutory and contractual duties to safeguard its clients' patients' Personal Information, leaving them injured and exposed to a heightened, ongoing risk of future harm for years to come. *Id.* ¶¶ 29, 125, 141, 168, 240.

### C. Plaintiffs Suffered Harm Following NRS's Data Breach

Plaintiffs have already suffered injuries resulting from the Data Breach. Plaintiffs and Class Members have spent, and will continue to spend additional time, on a variety of prudent actions, such as monitoring their financial accounts and credit reports, changing passwords, and resecuring their own computer systems. *Id.* ¶¶ 46, 58, 71, 85, 97. Plaintiffs and Class Members now face years of

3

constant surveillance of their financial and personal records, monitoring, and loss of rights. *Id.* ¶¶ 49, 62, 75, 88, 100, 153, 166-69. Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Personal Information. *Id.* Additionally, Plaintiffs have experienced an increase in spam and scam phone calls, text messages, and emails, further suggesting that their Personal Information is now in the hands of cybercriminals who are misusing it. *Id.* ¶ 74. As a result of the Data Breach, Plaintiffs have suffered lost time, annoyance, distress, interference, and inconvenience. *Id.* ¶¶ 46, 58, 71, 85, 97, 153, 175. Plaintiffs have further experienced emotional distress and increased stress, anxiety and ongoing concerns about the loss of their privacy, for the loss of control over their most intimate information, the lifelong need for vigilance, and the burdensome actions they have been forced to undertake in response to the Data Breach. *Id.* ¶¶ 48, 60-61, 73, 87, 99, 153.

Plaintiffs have suffered imminent and impending injury arising from the increased risk of fraud, identity theft, and misuse resulting from their Personal Information being placed in the hands of criminals. *Id.* ¶¶ 45, 57, 70, 83, 96, 103, 153, 175. They have also suffered from the actual misuse of their compromised Personal Information, a decrease in value of their Personal Information, and the loss of the benefit of their bargain with NRS. *Id.* ¶¶ 51-101.

## III.  LEGAL STANDARD

When presented with a motion to dismiss under Federal Rule of Civil Procedure 12, federal courts must accept the plaintiff's factual allegations as true. *Parsons v. U.S. Dep't Justice*, 801 F.3d 701, 706 (6th Cir. 2015). The court then determines whether those factual allegations place the defendant on notice of a plausible claim against it. *In re HCA Healthcare, Inc. Data Security Litig.*, No. 3:23-cv-684, 2024 WL 3857330, at *2 (M.D. Tenn. Aug. 15, 2024). "A claim has facial plausibility when [ ] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim may

4

not be dismissed even if it is "improbable" that a plaintiff will be able to prove those facts or if the odds of recovery are "remote and unlikely." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 447 (6th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Similarly, courts presented with a motion to dismiss pursuant to Rule 12(b)(1) for lack of Article III standing must also accept the plaintiff's factual allegations as true. *Parsons*, 801 F.3d at 710. Indeed, at the pleading stage, plaintiffs must prove they have standing to sue but need only plausibly allege their Article III standing. *Lujan v. Def's of Wildlife*, 504 U.S. 555, 561 (1992); *Novo Nordisk, Inc. v. DCA Pharm.*, No. 3:23-cv-668, 2024 WL 3836087, at *2 (M.D. Tenn. Aug. 15, 2024).

## IV. ARGUMENT

### A. Choice of Law

For purposes of resolving NRS's Motion to Dismiss, Plaintiffs do not contest application of Tennessee law to the claims of the Nationwide Class Members and Tennessee Subclass.[1] However, application of Tennessee law to the claims of the Georgia and North Carolina subclasses is inappropriate, and NRS misstates Tennessee's conflict of laws approach.

Tennessee has adopted the *Restatement (Second) of Conflict of Laws*, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). "[G]enerally the law of the state where the injury occurred will have the most significant relationship to the litigation." *Id.* Only when it is unclear which state has a stronger interest, courts consider the following factors to determine the state with the most significant relationship: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any,

---

[1] Plaintiffs reserve the right to further brief the choice-of-law analysis for the Nationwide Class as this case progresses.

5

between the parties is centered." *Id.* "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* For contract claims, Tennessee law provides that a contract is governed by the law of the state where it was executed. *See Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (citation omitted).

Here, three of the five named Plaintiffs are residents of Georgia: Plaintiffs Cooper, Self, and Mitchell. The fifth named Plaintiff, Long, is a resident of North Carolina. Neither of these Plaintiffs had a direct relationship with NRS but, rather, they are current or former patients of the healthcare provider clients of NRS. *See* Compl. 67 ¶¶ 39, 51, 64, 91. Thus, it cannot be said that they executed a contract with NRS in Tennessee. *See Ohio Cas. Ins. Co. v. Travelers Indem. Co.,* 493 S.W.2d 465, 467 (Tenn.1973) ("[A] contract is presumed to be made with reference to the law of the place where it was entered into[.]"). Moreover, because each of these Plaintiffs reside in states outside of Tennessee, their injuries occurred in their home states of Georgia and North Carolina, and Georgia and North Carolina are presumed to be the states with the most significant relationship to their claims. *Hataway*, 830 S.W.2d at 59.

Moreover, although a forum state typically has no obligation to apply another state's laws, the forum state's laws "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Phillips Petrol. Co. v. Shutts,* 472 U.S. 797, 822, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Yet, that is precisely what applying Tennessee Law—and therefore the Cybersecurity Statute—across all subclasses would do. As this Court has previously explained, the Cybersecurity Statute "goes beyond 'merely affecting[ing] the 'procedural privilege to proceed as a class action.' Rather, it alters the 'vested rights and liabilities of the parties' by heightening the *mens rea* required for defendants to be liable." *Haney,* 2024 WL 4054361 at *8 (internal citations omitted).

As a result, in the class action context, courts faced with choice of law issues often approve of the use of subclasses to make class actions more manageable. *Simon v. Philip Morris Inc.*, 124 F. Supp.

6

2d 46, 77 (E.D.N.Y. 2000) (citing *Alexander v. Centrafarm Group,* 124 F.R.D. 178, 186 (N.D.Ill.1988) (predicting that lack of variation among state fraud laws would produce few individual questions); *In re LILCO Sec. Litig.,* 111 F.R.D. 663, 670 (E.D.N.Y.1986) (doubting that differences in state laws were "so great as to preclude class treatment" and providing for the use of subclasses); *Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 58 (S.D.N.Y.1993) (discounting defendants' "speculative forecast of difficulties" and certifying provisionally on ground that subclasses can be created); *see also* Larry Kramer, *Choice of Law in Complex Litigation*, 71 N.Y.U. L.Rev. 547, 583 (1996) ("States tend to copy their laws from each other, and many use identical or virtually identical rules. In practice, the court will seldom have to deal with more than three or four formulations").[2] That is what Plaintiffs have done here: pled three distinct subclasses—Tennessee, Georgia, and North Carolina—protecting the rights of those in each subclass while also making the litigation more manageable. *See* Compl. ¶ 178.

### B.  Plaintiffs claims are not barred by Tenn. Code Ann. § 29-34-215.

As a threshold matter, NRS misconstrues the application of the Cybersecurity Statute, Tenn. Code Ann. § 29–34–215, arguing that it "categorically bars" Plaintiffs' Amended Complaint. MTD at 4. The Cybersecurity Statute is a rule of substantive law affecting liability, the only operative provision of which is a single sentence: "A private entity is not liable in a class action lawsuit resulting from a cybersecurity event unless the cybersecurity event was caused by willful and wanton misconduct or gross negligence on the part of the private entity." Tenn. Code Ann. § 29–34–215(b). As a result, the statute only applies to the extent the Court applies Tennessee law to any Plaintiff's claims, those Plaintiffs need only plausibly allege willful and wanton misconduct or gross negligence on the part of NRS, and Plaintiffs have done so.

---

[2] Although this Court chose to apply Tennessee Law in *Haney*, there, the proposed class was nationwide and lacked state-specific subclasses defined in this case. *Cf.* 747 F. Supp. 3d at 1107, *with* Compl. ¶ 178. Moreover, the *Haney* plaintiffs were not in danger of having their rights abrogated by applying Tennessee Law and the Cybersecurity Statute's *mens rea* requirements because this Court determined that the statute did not apply retroactively. *See Haney*, 747 F. Supp. 3d at 1109.

The Tennessee Supreme Court has long held that gross negligence "requires proof of the defendant's subjective mental state." *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 61 (Tenn. 2023) (citing *Craig v. Stagner*, 19 S.W.2d 234, 236 (Tenn. 1929), *abrogated by McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992) (defining "gross negligence" as "[s]uch entire want of care as would raise a presumption of a conscious indifference to consequences")). "The required 'mental attitude' is instead 'one of indifference to injurious consequences, conscious recklessness of the rights of others.'" *Id.* at 61–62.

At this stage of the litigation, Plaintiffs are unable to provide evidence of NRS's subjective mental state, which will be established in discovery and put before a jury to consider. Plaintiffs can (and have), however, satisfied all pleading requirements: they allege sufficient factual matter to state a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). Here, Plaintiffs allege, in pertinent part, the following facts: NRS received, used, and maintained Plaintiff Riggs' and Tennessee Subclass Members' Personal Information in the course of its contracts with its clients, Plaintiffs' and Class Members' healthcare providers, *see* Compl. ¶¶ 221–22; NRS owed a duty to exercise reasonable care in handling and using Plaintiff Riggs' and Tennessee Subclass Members' Personal Information, including by implementing and maintaining adequate cybersecurity safeguards, *see id.* ¶¶ 222-23; NRS had not implemented reasonable cybersecurity safeguards, *see id.* ¶ 230-31; NRS's cybersecurity posture was so insufficient hackers were able to infiltrate NRS's network and stay there for nearly a week before NRS even realized malicious activity was occurring, and nearly a full year passed before NRS informed victims of the Data Breach, *see id.* ¶ 32, 35; and NRS acted with wanton and reckless disregard for the security and confidentiality of Plaintiff Riggs' and the Tennessee Subclass's Personal Information by disclosing and providing access to this information to third parties and by failing to implement and maintain safeguards, like

8

multifactor authentication and encryption, to keep the Personal Information protected when stored, used, and transmitted. *See id.* ¶ 224.

The reasonable inference to be drawn from these facts, construed in Plaintiffs' favor, is that NRS has *never* enacted appropriate cybersecurity measures. NRS's utter failure—in the face of pervasive data security threats to a targeted industry, which NRS acknowledges[3]—amounts to "such reckless disregard for the rights of others that a conscious indifference to the consequences can be implied." T.P.I.—CIVIL 3.31 Gross Negligence, 8 Tenn. Prac. Pattern Jury Instr. (2025 ed.).

NRS's argument boils down to a protest that Plaintiffs have failed to allege facts that are solely within NRS's knowledge and that NRS has decided not to reveal. *See e.g.*, MTD at 5 (arguing that Plaintiffs has not alleged specific supporting factual details for which industry standards, FTC Act and HIPAA requirements NRS failed to implement); *id.* at 6 (arguing that Plaintiffs have not alleged plausible facts as to NRS's subjective mentality before, during, or after the Data Incident."). This argument misses the mark. *See In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 636–37 (N.D. Cal. 2024) (explaining that, "in data breach cases, it would be 'unreasonable for defendant to insist that the details be laid out in the initial complaint,' because the 'ordinary consumer [ ] has no clue what internet companies' security steps are.'"). Moreover, at this stage, it is *NRS* who has the information about the Data Breach that Plaintiffs must learn through discovery—as NRS has failed to inform the public about what really happened. *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988) ("Courts have held that [Rule 9(b)] may be relaxed where information is only within the opposing party's knowledge."); *Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 229 (1st Cir. 2004) ("[Federal] Rule 9(b) pleading standards may be relaxed, in an appropriate case, 'when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion'").

---

[3] "Plaintiffs seek to impose punitive liability on NRS merely because it—like so many other companies today—fell victim to a sophisticated cyberattack perpetrated by a malicious third party criminal enterprise." MTD at 2.

As such, the Cybersecurity Statute does not demand a heightened "exceedingly high bar necessary for Plaintiffs to avoid dismissal," MTD at 5. And even under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," but "**[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally**." Fed. R. Civ. P. 9(b) (emphasis added); *see also Perdue v. HyVee, Inc.*, 455 F. Supp. 3d 749, 769 (C.D. Ill. 2020) ("Even assuming *arguendo* that the Rule 9(b) standard applies, Plaintiffs have alleged enough facts to establish who (NRS), what and how (security was inadequate to protect against a data breach and the information was withheld), when (the data breach occurred between November 2018 and August 2019), and where (respective Plaintiffs' states).").

The Amended Complaint plausibly alleges willful and wanton misconduct or gross negligence on the part of NRS. That is, under the Cybersecurity Statute, Plaintiff Riggs has pled sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Plaintiff has done all that is required. *See, e.g.*, *CMH Mfg., Inc. v. GKD Mgmt., LP*, 2019 WL 10980481, at *15 (E.D. Tenn. Dec. 10, 2019) (holding that allegations that the defendant knew of and consciously disregarded the risk "that would befall [the plaintiffs] if coverage were denied" were enough to allege gross negligence).[4]

**C.  Plaintiffs Have Established Article III Standing.**

Plaintiffs have standing based on actual injuries caused to them as a direct result of the Data Breach, including fraudulent misuse of Plaintiffs' and the Class Members' Personal Information stolen in the Data Breach, identity theft, monetary damages, the value of lost time expended to mitigate the consequences of the Data Breach, loss of value of the Personal Information disclosed, and invasion of their privacy rights. Compl. ¶ 59, 72, 84-86, 98, 153, 175, 202, 217, 233. Indeed, in *TransUnion LLC*

---

[4] Moreover, what constitutes gross negligence is ultimately a question for the jury. *See Bihsop v. AVR Express, LLC*, 2023 WL 8484157, at *4 (W.D. Tenn. Oct. 12, 2023); *Teles v. Big Rock Stables, L.P.*, 419 F. Supp. 2d 1003, 1009 (E.D. Tenn. 2006).

*v. Ramirez,* 594 U.S. 413 (2021), the Supreme Court expressly recognized the concrete nature of privacy harms. Moreover, Courts are aligned that data breach victims have standing to sue if the circumstances of the data breach place them at a heightened risk of identity theft and fraud—as was the case here. As detailed below, these injuries are all sufficient to confer standing.

### 1. Substantial risk of identity theft and fraud

Plaintiffs plausibly allege standing based on the substantial risk of identity theft and fraud they must now face for years to come because of NRS's failures. Compl. ¶ 49, 62, 75, 88, 100, 154, 168, 175. Contrary to NRS's assertion, a substantial increase in the risk of identity theft and fraud is a concrete harm when it exists due to the disclosure of highly sensitive PII to cybercriminals in a targeted cyberattack. *See Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 387 (6th Cir. 2016). NRS resists *Galaria's* logic, protesting that "as courts throughout this Circuit have since acknowledged, *Galaria* is not consistent with, and is abrogated by, the Supreme Court's decision in *TransUnion*." MTD at 8. Contrary to NRS's argument, *TransUnion* did no such thing—as this very Court recently explained a little over a year ago: "*Galaria's* holding that substantial risk of future harm coupled with reasonably incurred mitigation costs is a concrete injury squares with *TransUnion's* holding that 'the mere risk of future harm, standing alone, cannot qualify as a concrete harm ... unless the exposure to the risk of future harm itself causes a separate concrete harm . . . *Galaria* is consistent with *TransUnion* and still good law.'" *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1105, 2024 WL 4054361, at *4 (E.D. Tenn. 2024) (emphasis in original) (internal citations omitted).

Indeed, *Krupa v. TIC Int'l Corp.* outlines why such allegations are sufficient for standing:

> At first glance, this seems an odd case to be arguing about standing and damages. Krupa is not a random plaintiff speculating about future risks of harm or seeking to assert the rights of others—he personally is a victim of a data breach that actually happened. His social security number was stolen, and he alleges that TIC had it been more careful could have prevented the theft. If this were a bank robbery no one would blink. It is a classic adversarial case. The only way TIC can prevail on its motion to dismiss, then, is if it can show that the exposure of Krupa's social security number to hackers was not an injury at all.

11

> And, again at first glance, that seems an odd position to take. Having one's social security number stolen seems an obvious harm. If it were not a harm, why should TIC (or anyone else) take any data security measures? TIC might as well leave its customer lists in a spreadsheet on its website.

2023 WL 143140, at *2 (S.D. Ind. Jan. 10, 2023); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) ("Why else would hackers break into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities."). So too here. Taking Plaintiffs' allegations as true and construing them in the light most favorable to Plaintiffs, these allegations sufficiently allege standing for the substantial risk of future harm Plaintiffs now face.

Moreover, Plaintiffs allege *more* than this threshold requirement for standing, and explain that they have already experienced misuse resulting from the Data Breach. For example, Plaintiff Riggs alleges that after the Data Breach, he experienced over $1,900 in attempted fraudulent charges to his financial account in early 2025. Compl. ¶ 84. Additionally, Plaintiff Mitchell alleges that after the Data Breach, he experienced a significant increase in spam emails. *Id.* ¶ 74. As the above cases illustrate, at this stage of the pleadings, accepting the Complaint's allegations as true and construing them in the light most favorable to Plaintiffs—as the Court must—Plaintiffs sufficiently allege Article III standing. *See e.g.*, *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 687 (W.D. Ky. 2024), *amended*, 2025 WL 964446 (W.D. Ky. Mar. 31, 2025) ("As the case law makes clear, "courts have been more likely to conclude that a plaintiff has established a 'substantial risk of future injury' where some part of the compromised dataset has been misued—even if a plaintiff's own data has not."); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155–56 (3d Cir. 2022) ("Following *TransUnion*'s guidance, we hold that in the data breach context, where the asserted theory of injury is a substantial risk of identity theft or fraud, a plaintiff suing for damages can satisfy concreteness as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms.").

NRS also advances the related but curious argument that "the mere fact of fraudulent charges, without more, does not create standing where the charges have been reimbursed, forgiven, only attempted, or otherwise did not result in out-of-pocket expenses or economic loss." MTD at 13. NRS's four non-binding cases—three from the Eleventh Circuit and one from the Second Circuit, all decided nine or more years ago—are hardly sound authority. "[T]he Eleventh Circuit has discounted NRS's argument that Plaintiffs must allege their fraudulent charges were unreimbursed." *In re Brinker Data Incident Litig.*, 2019 WL 3502993, at *5 (M.D. Fla. Aug. 1, 2019) (citing *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("AvMed contends that Plaintiffs' injuries are not cognizable under Florida law because the Complaint alleges only 'losses,' not 'unreimbursed losses.' This is a specious argument.")); *see also Smith v. Triad of Alabama, LLC*, 2015 WL 5793318, at *9 (M.D. Ala. Sept. 29, 2015) ("there is no precedent binding on this court stating that for standing purposes, a victim of identity theft must allege that he or she suffered economic damages or that he/she suffered an un-reimbursed or out-of-pocket expense, and this court will not so hold."). Similarly, in *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577 (E.D.N.Y. 2015), the court found the plaintiff had not suffered *actual* harm because she had not suffered any unreimbursed charges. But here, "the question is whether Plaintiffs have standing based on the increased risk of *future* harm." *Savidge,* 727 F. Supp. 3d at 686 (emphasis in original) (internal citations omitted). NRS's argument is simply against the weight of the law. *See Remijas*, 794 F.3d at 690 (reversing district court's decision that victims of identity theft whose credit cards were compromised had suffered no injury in fact sufficient for standing because they had been reimbursed for the unauthorized charges).

### 2. Mitigation efforts

Because of the substantial harm Plaintiffs now face, the time they were required to spend mitigating the risk of that harm confers standing as well. Plaintiffs have been forced to spend time dealing with, responding to, and mitigating the direct consequences of the Data Breach, including

13

Plaintiff Riggs' significant time investigating the attempted fraudulent charges to his account caused by the Data Breach. Compl. ¶ 46, 58, 71, 85, 97. Importantly, though some of the time Plaintiffs had to spend counts as mitigation damages—such as reviewing bank account statements at NRS's direction to look for fraudulent charges, Plaintiff Riggs' time spent responding to actual misuse is not an instance of mitigating damages before they occur but rather an example of actual monetary damages caused by NRS's failures and is an independent concrete harm.

Because Plaintiffs plausibly allege they are at a substantial risk of future harm, their mitigation expenses are also a concrete harm for standing purposes. *See Remijas*, 794 F.3d at 692 ("the aggravation and loss of value of the time needed to set things straight" for individuals alleging fraudulent card charges suffered Article III injury); *Galaria*, 663 Fed. Appx. at 388 ("[I]t would be unreasonable to expect Plaintiffs to wait for actual misuse—a fraudulent charge on a credit card, for example—before taking steps to ensure their own personal and financial security, particularly when Nationwide recommended taking these steps."); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017) ("[M]itigation expenses satisfy the injury requirements of negligence" because "Plaintiffs were required to take reasonable steps to mitigate the consequences of the data breach; they could not passively wait for their identities and money to be stolen.").

### 3. Emotional distress

Plaintiffs allege a concrete harm in the form of stress, anxiety, and sleep disruption because of their Personal Information being disclosed to the exact people the cybersecurity measures were supposed to protect them from. Compl. ¶¶ 48, 60-61, 73, 87, 99. Courts have found allegations of anxiety and stress resulting from a data breach sufficient to show a cognizable injury. *See, e.g. Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319, at *6 (W.D. Ky. Sept. 8, 2022) (averments of mental distress related to plaintiffs' fear of identity theft and of stress, nuisance, and annoyance of dealing with issues resulting from a data breach sufficient to show cognizable injury); *In re Moveit Customer Data*

14

*Security Breach Litig.*, 2024 WL 5092276, at \*11 (D. Mass. Dec. 12, 2024) (emotional damage serves as independent basis for standing if in response to nonspeculative exposure to increased risks of harm).

Despite NRS's suggestion to the contrary, *TransUnion* is instructive as to why Plaintiffs have indeed pled injury by alleging emotional distress. There, the Court acknowledged that "a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." 594 U.S. at 436 n.7. Since *TransUnion*, multiple courts have held that plaintiffs can allege standing based on emotional distress resulting from a substantial risk of identity theft or fraud. *See, e.g.*, *Clemens*, 48 F.4th at 155; *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1203 (S.D. Fla. 2022) ("[T]he question in this case is . . . whether allegations of emotional distress, coupled with the substantial risk of future harm, are sufficiently concrete to establish standing in a claim for damages. The Court concludes that they are."). This Court should do the same.

### 4. Loss of privacy

As the Supreme Court expressly recognized in *TransUnion*, Plaintiffs have standing because the Data Breach caused them to suffer a severe invasion of privacy long recognized in American courts. Compl. ¶ 262; *see also TransUnion LLC*, 594 U.S. at 432. NRS protests that Plaintiffs' Personal Information—including Social Security Numbers—"does not concern Plaintiffs' private lives, and its release is not 'highly offensive to a reasonable person' as a matter of law." MTD at 12. Courts across the country disagree. "[T]he weight of post-*TransUnion* authority establishes that [plaintiff's] alleged privacy injury is sufficiently concrete for Article III purposes." *Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 437 (N.D. Ohio 2023); *see also Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 285 (2d Cir. 2023) ("Similar to the publication of misleading information about some of the plaintiffs in *TransUnion*, the core injury here—exposure of Bohnak's private PII to unauthorized third parties— bears some relationship to a well-established common-law analog: public disclosure of private

facts.").That is exactly what *TransUnion* held when it differentiated between one group of plaintiffs whose private information had not be sent to unauthorized third parties and another group of individuals whose information had been disseminated to unauthorized third parties. *TransUnion*, 594 U.S. at 432–35. Because the second group of 1,853 people had their information disclosed to unauthorized individuals, the Court had "no trouble concluding" that they had suffered a concrete injury. *Id.* at 432.

NRS briefly also argues that Plaintiffs fail to allege public disclosure of their data. *See* MTD at 12. Again, NRS ignores Plaintiffs' allegations,[5] which allege this information was unauthorizedly disclosed to cybercriminals, Compl. ¶ 257, that due to the nature of the cyberattack, that information has or imminently will be posted on the dark web, *id.* ¶¶ 45, 258, that upon information and belief, that information it is being used to commit fraud; it is being disseminated amongst, *inter alia*, financial institutions, merchants, creditors, health care providers and governmental agencies, and as a result, "[i]t is therefore likely that Plaintiffs' and Class Members' Personal Information is rapidly becoming public knowledge—among the community at large—due to the nature of the Data Breach that caused its disclosure, and the identity theft for which the Data Breach was designed." *Id.* ¶ 259.

Moreover, "a number of courts when considering the tort of public disclosure of private facts have endorsed an exception that holds that the publicity element may be satisfied where the information is released to a small number of persons who have a special relationship with the

---

[5] Defendant's argument that Plaintiffs' allegations "emphasize that the Personal Information published—whether actually or potentially—on the 'dark web' is difficult to access," is an excellent example of Defendant not only contesting the merits of Plaintiffs' Complaint—and incorrectly so=— but also asking the Court to take the facts in the light most favorable to *Defendant*. "The dark web, an anonymous online network for unregulated content and markets, is not a traditional method of communicating information like a newspaper or radio broadcast. But, not dissimilar to the internet more generally, it is a forum accessible to all—or at least to those with some degree of proficiency with computers. Information listed on it thus either 'reaches, or is sure to reach, the public,' or is close to doing so." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 426 (4th Cir. 2025).

16

plaintiff[.]" *Finley v. Kelly*, 384 F. Supp. 3d 898, 909, 2019 WL 2482159 (M.D. Tenn. 2019); *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 981 (1st Dist. 1990) ("In circumstances where a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed, the disclosure may be just as devastating to the person even though the disclosure was made to a limited number of people[.]"). Although NRS urges the Court to resolve these factual questions at the motion to dismiss stage—including, among other questions, the scope of who the information was disclosed to and the scope of information disclosed to them—at the very least, Plaintiffs' allegations give rise to genuine issues of material fact that preclude dismissal on this ground. *See Finley*, 384 F. Supp. 3d at 910 ("Plaintiffs have alleged a *plausible* allegation that the allegedly defamatory statements were further distributed . . . Moreover, because the Document was shared in digital format, it would not take much to resend the Document to others. Only discovery can sort out this issue.") (emphasis in original); *Jodry v. Fire Door Sols., LLC*, 2020 WL 7769924, at *7–8 (M.D. Tenn. Dec. 30, 2020) ("Defendants improperly conflate an evidentiary standard (as used on summary judgment) with the pleading standard (as used on a motion to dismiss)"). The theft caused Plaintiffs and the Class Members' highly sensitive Personal Information to fall into the hands of the exact people from whom that data is supposed to be protected—cybercriminals and identity thieves. That disclosure is a harm long recognized in American courts. *TransUnion* forecloses any argument to the contrary.

### 5. Loss of value of Personal Information

Plaintiffs allege a cognizable injury by alleging the value of their private information decreased because of the Data Breach. Am. Compl. ¶¶ 47, 59, 72, 86, 98. Several federal courts addressing identical facts have recognized that "[d]iminution in value of personal information can be a viable theory of damages." *See, e.g.*, *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020), *affirmed* 845 Fed. App'x 613 (9th Cir. 2021). Plaintiffs need not literally "reduce their . . . PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale

17

to the highest bidder." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d at 1204 (collecting cases). Instead, it is sufficient for Plaintiffs to "allege details about the existence of an economic market for selling stolen PII, including the fact that PII can be bought and sold at identifiable prices on established markets." *Smallman v. MGM Resorts Int'l,* 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022). Plaintiffs allege a robust marketplace for private information exists, and that Plaintiffs' information's value is now damaged and diminished due to its unauthorized release onto the Dark Web. Compl. ¶¶ 165, 167–170. As in *Smallman*, Plaintiffs have been damaged by being stripped of their fiscal autonomy to use (or not use) their own information. 638 F. Supp. 3d at 1191. Plaintiffs are entitled to recover for these injuries. In any event, "Plaintiffs do not need to assign a value at this stage to adequately plead damages." *In re Marriott,* 440 F. Supp. 3d at 494. This Court should permit Plaintiffs the benefit of discovery to prove their damages theory based on the diminished value of their data compromised in the Data Breach. *See generally United States v. Manning,* 78 M.J. 501, 518 (A. Ct. Crim. App. 2018) (discussing value of PII based on evidence).

### D.  Plaintiffs Plausibly Allege All Claims.

#### 1.  Negligence

To state a negligence claim under Tennessee, Georgia, and North Carolina law, a plaintiff must allege: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993); *Rasnick v. Krishna Hosp., Inc.,* 289 Ga. 565, 566 (2011); *Farley v. Eye Care Leaders Holdings, LLC,* 2023 WL 1353558, at *5 (M.D.N.C. Jan. 31, 2023). NRS apparently concedes that duty and causation are adequately pled and takes issue only with the elements of breach and injury. Each of these issues are addressed in turn.

18

### a. Plaintiffs Adequately Plead NRS's Breach.

NRS claims that Plaintiffs' 57-page pleading does not contain sufficient detail about how NRS breached its duties of care. MTD at 17. NRS insists that the Complaint does not contain the "'particularized' allegations required under Civil Rule 8." *Id.* But Rule 8 contains no such requirement— it requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Moreover, while duty is a question of law to be resolved by the Court, whether NRS breached a duty and the extent of the damages are both questions of fact best left to a jury's determination. *Bradshaw*, 854 S.W.2d at 869; *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 91 (Tenn. 2000) (holding that where reasonable minds could differ on the reasonableness of a party's actions, the issue should be decided by a jury); *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997) ("[A]s a general rule, negligence cases are not amenable to disposition on summary judgment."); *Murphy v. Georgia Pacific Corp.*, 331 N.C. 702, 706, 417 S.E.2d 460, 463 (1992) (reversing grant of summary judgment because factual questions of causation were for the jury).

Indeed, "all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others." *Bradshaw*, 854 S.W.2d at 870. Moreover, "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully." *Biscan v. Brown*, 160 S.W.3d 462, 482–83 (Tenn. 2005) (citation omitted); *Cotten v. Wilson*, 576 S.W.3d 626, 644 (Tenn. 2019) (intervening act of a third party resulting from defendant's negligence does not bar liability). Accordingly, a defendant is liable where "(a) his failure to exercise reasonable care increases the risk of such harm, *or* (b) he has undertaken to perform a duty owed by the other to the third person, *or* (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." *Biscan*, 160 S.W.3d at 480 (quoting Restatement § 324A). Here, Plaintiffs allege NRS owed a duty under common law and statutory law to protect their Personal Information and that NRS's failure to protect their Personal Information caused the Data Breach and resulting harms to

Plaintiffs and the Classes. Compl. ¶¶ 5, 37, 199, 142-145, 202. Contrary to NRS's arguments, Plaintiffs detail the many ways in which NRS breached its duties, including specifically, by failing to "exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons," "act upon data security warnings and alerts in a timely fashion;" and "disclose in a timely and accurate manner when and how the Data Breach occurred, and the extent of Personal Information involved." Compl. ¶¶ 139-46, 193-200, 202-09.

NRS falsely claims that Plaintiffs fail to allege facts showing that notice of the Data Breach was untimely. *See* MTD at 17. NRS cites *Cahill*, where the court noted that two weeks was an insufficient amount of time for notification to be deemed untimely. *Cahill v. Mem. Heart Inst., LLC*, No. 1:23-cv-168, 2024 WL 4311648, at *7 (E.D. Tenn. Sept. 26, 2024) (citation omitted). Here, however, Plaintiffs allege Defendanted waited about eight months to begin notifying the Classes, causing them additional injury. Compl. ¶¶ 6, 32, 137, 200, 231. These allegations "sufficiently plead injury suffered as the result of the alleged delay" because the Court can "infer[] that the cybercriminals who accessed Plaintiffs' data will use the data for fraudulent purposes." *Cahill*, 2024 WL 4311648, at *9; *Farley*, 2023 WL 1353558, at *5 (denying motion to dismiss negligence claim under Rule 12(b)(6) after a data breach: "[P]laintiffs have met the minimal standard of plausibility for each of their claims."). Plaintiffs clearly allege NRS breached its duty to provide timely notice of the Data Breach.

It was reasonably foreseeable that Plaintiffs would suffer the harms alleged if NRS failed to secure Plaintiffs' Personal Information from unauthorized access. Courts have repeatedly concluded that plaintiffs alleged breach of a duty under similar allegations. *See, e.g., McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 818 (E.D. Ky. 2019). Thus, Plaintiffs adequately allege breach here.

### b. Plaintiffs Adequately Plead Damages.

It is well-settled that a plaintiff may plead and recover for economic and non-economic

damages. *Dedmon v. Steelman*, 535 S.W.3d 431, 437 (Tenn. 2017). As explained above, Plaintiffs allege several damages that are more than adequate to support an action for negligence, including loss of privacy; lost time and opportunities from attempting to mitigate the consequences of the Data Breach; misuse of their Personal Information; emotional distress; and increased risk of fraud and identity theft as a result of the Data Breach and because NRS still maintains their Personal Information in an unsecure and unencrypted manner. Compl. ¶¶ 50, 63, 76, 89, 101, 153, 202, 217, 233. This is sufficient, as these are the precise types of injuries that support a claim for negligence in a data-breach context. It is "common sense" that "an injury exists where, at the very least, criminals have hacked into a data system and exfiltrated personally identifiable information and protected health information." *Tracy v. Elekta, Inc.*, 667 F. Supp. 3d 1276, 1283 (N.D. Ga. 2023) (finding that plaintiffs "sufficiently alleged harm" by alleging that their data was in the hands of criminals and that plaintiffs stated a claim for negligence). "There is no need for speculation where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals." *Galaria*, 663 Fed. App'x. at 388 ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in [the p]laintiffs' complaints."). "Why else would hackers break into a [companies'] database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities." *Remijas*, 794 F.3d at 693. In *Mason v. Wright Brothers Construction Company, Inc.*, No. 1:24-cv-384, 2025 WL 939709 (E.D. Tenn. Mar. 27, 2025), this Court upheld the plaintiff's negligence claim, concluding that "[g]iven the type of data stolen here [(i.e., Social Security numbers)], privacy harm and an increased risk of identity theft are cognizable injuries. . . . arising from Defendant's negligence in securing the PII." *Id.* at *7.

Indeed, courts have repeatedly held that the injuries naturally flowing from a data breach are cognizable and constitute damages to support a negligence claim. *See, e.g.*, *Dieffenbach v. Barnes & Noble,*

*Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("[T]he value of one's own time needed to set things straight is a loss from an opportunity-cost perspective."); *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1216-1221 (11th Cir. 2023) (reversing dismissal of negligence claim where plaintiff alleged data breach caused anxiety, increased risk of fraud, and diminished value of PII); *Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319, at *6 (W.D. Ky. Sept. 8, 2022) (averments of mental distress related to plaintiffs' fear of identity theft and of stress, resulting from a data breach sufficient to show cognizable injury); *McCreary v. Filters Fast LLC*, 2021 WL 3044228, at *8 (W.D.N.C. Jul. 19, 2021) (allowing negligence claim in data breach case); *Cahill*, 2024 WL 4311648, at *8 ("Privacy harm is a cognizable injury, as is an increased risk of identity theft."). Plaintiffs' negligence claim is well pled.

### 2. Negligence *Per Se*

"The doctrine of negligence per se is firmly established in Tennessee law. 'The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se.'" *Shipwash v. United Airlines, Inc.*, 28 F. Supp. 3d 740, 751 (E.D. Tenn. 2014) (citation omitted); *see also Faber v. CIOX Health, LLC*, 2017 WL 5957206, at *5-6 (W.D. Tenn. Sept. 29, 2017), *aff'd* 944 F.3d 593 (6th Cir. 2019) (citing *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 34-35 (Tenn. 1988)) (Under Tennessee law, "a violation of federal and state regulations can be the basis for a negligence claim."). NRS agrees that Tennessee law recognizes that a claim for negligence *per se* has three elements: (1) a violation of a statutory or regulatory duty of care; (2) a showing that the statute or regulation was meant to benefit and protect the injured party; and (3) proximate cause. *Steinberg v. Luedtke Trucking, Inc.*, 2018 WL 3233341, at *3 (E.D. Tenn. July 2, 2018).[6] Yet, NRS argues that Plaintiffs' claim fails because (1)

---

[6] The same elements exist under North Carolina and Georgia law. *See Capiau v. Ascendum Machinery, Inc.*, 2024 WL 3747191, at *10 (W.D.N.C. Aug. 9, 2024) (finding that plaintiffs adequately pled negligence *per se* under the FTCA in a data breach case); *Covington v. Gifted Nurses, LLC*, 2023 WL 5167366, at *9 (N.D. Ga. July 19, 2023) (same).

22

it is duplicative of Plaintiffs' negligence claim, (2) there is no private right of action under the statutes, and (3) no specific standard of conduct has been established. NRS's arguments have repeatedly been rejected throughout the country, and accordingly, must fail here as well.

Although the Tennessee Supreme Court has not addressed whether Section 5 of the FTC Act, 15 U.S.C. § 45, imposes a standard of care relative to Plaintiffs' negligence claim, numerous courts considering this issue have determined that "Section 5 of the FTC Act is a statute that creates enforceable duties, and this duty is ascertainable as it relates to data breach cases" *See, e.g., In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020) (citing cases); *Richardson v. Cumberland Heights Foundation, Inc.*, No. 24-1258-I (Tenn. Ch. Ct. Mar. 17, 2025) (attached as **Exhibit A**) (finding Plaintiffs' allegations for negligence *per se* sufficient when "premised on legal duties owed to Plaintiff that allegedly arise under two federal statutes, the FTC and HIPPA"). As these courts recognize, the failure to provide reasonable cyber security measures constitutes an unfair act under Section 5. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 241, 247 (3d Cir. 2015); *LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018) (same). These courts have expressly concluded that "plaintiffs whose information was allegedly compromised by a data breach fit within the class of plaintiffs sought to be protected from the type of harm proscribed by the statute." *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020); *see also In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1327 (N.D. Ga. 2019).

Moreover, Tennessee "allow[s] a negligence per se action to proceed even where it is based on statutes that provide no private right of action." *In re Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *26–27 (N.D. Ala. Sept. 12, 2016). Indeed, a violation of HIPAA can form the basis of a negligence *per se* claim under applicable law. *See Faber v. CIOX Health, LLC*, 2017 WL 5957206, at *5–6, *aff'd*, 944 F.3d 593 (6th Cir. 2019) (finding that plaintiffs alleged

23

negligence *per se* when they alleged that defendant violated HIPAA and argued for HIPAA to "inform the duty of care for its negligence claim and provide the statutory duty that is the basis for a negligence *per se* claim."). And, of course, "[u]nder the Federal Rules of Civil Procedure parties are permitted to plead alternative theories of recovery." *Bellis v. Tokio Marine and Fire Ins. Co., Ltd.*, No. 93 CIV. 6549(DAB), 2002 WL 193149, at *11 (S.D.N.Y. Feb. 7, 2002); *see also* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

As Plaintiffs allege, NRS's failure to provide reasonable cyber security measures to protect the Personal Information constitutes an unfair act under the FTC Act and violates HIPAA. Compl. ¶¶ 208-214. Thus, Plaintiffs properly state a negligence *per se* claim. *See, e.g., In re Equifax*, 362 F. Supp. 3d at 1327 (denying motion to dismiss the plaintiffs' negligence *per se* claim in a data breach case because the complaint adequately pled a violation of the FTC Act, that the plaintiffs were within the class of persons that the FTC Act is intended to protect, and that the harm suffered is the kind that the statute meant to protect against); *see also Baldwin v. National Western Life Insurance Company*, No. 2:21-CV-04066-WJE, 2021 WL 4206736 (W.D. Mo. 2021).

### 3. Breach of Third-Party Beneficiary Contract

Contrary to NRS's argument, Plaintiffs allege sufficient facts reflecting the existence of contracts between NRS and their clients of which Plaintiffs were intended third-party beneficiaries. *See* Compl. ¶ 237 ("Plaintiffs and Class Members are third-party beneficiaries of contracts entered into between their healthcare providers and NRS, under which NRS received Plaintiffs' and Class Members' Personal Information, stored that information in its computer network systems, and provided medical billing and revenue cycle management services to Plaintiffs' and Class Members' healthcare providers, NRS's customers."); ¶ 27 ("[A]ll NRS's contracts with its healthcare provider clients required NRS to maintain adequate and legally compliant safeguards for the Personal

24

Information it received and maintained."); ¶ 238 ("[A]ll of NRS's contracts with its healthcare provider clients, including Plaintiffs' and Class Members' healthcare providers, obligated NRS to implement and maintain reasonable, industry-standard, HIPAA-compliant measures to protect the Personal Information NRS received, used, and stored in the course of performing these contracts from unauthorized disclosure."); ¶ 239 ("Plaintiffs and Class Members, as patients of healthcare providers that contracted with NRS, were the intended beneficiaries of NRS's contractual obligations with respect to data security, in that these obligations were expressly undertaken for the protection of NRS's clients' patients' Personal Information."). These alleged facts undoubtedly support Plaintiffs' assertion that they are third-party beneficiaries of said contracts. *See Carr v. Okla. Student Loan Auth.*, 699 F.Supp.3d 1241, 1250 (W.D. Okla. 2023) (finding that plaintiffs in a data breach case "plead facts that plausibly state a claim they were the intended third-party beneficiaries" of an IT contract).

NRS's reliance on *Montgomery v. Conrad*, No. 3:21-cv-00820, 2022 U.S. Dist. LEXIS 29575, *15 (M.D. Tenn. Feb. 18, 2022) is misplaced. *See* MTD at 22. In *Montgomery*, the court found the complaint did not contain allegations sufficient to support a breach of third-party beneficiary contract claim where the plaintiff's *sole* allegation in support of his claim was: "DCSO is a sub-division of Metropolitan Government of Nashville and Davidson County who has contracts with Defendants Securus Technologies and Vend Engine with inmates, including Plaintiff, as third-party beneficiaries." *Montgomery*, 2022 U.S. Dist. LEXIS 29575, at *15-17. Unlike in Plaintiffs' Complaint here, there were no factual allegations in support of the plaintiff's conclusory allegation that he was an intended third-party beneficiary of the contract he cited. *See id.* at *17.

## V.      Conclusion

Plaintiffs' well-pled allegations suffice to demonstrate standing and state viable claims for relief under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). NRS's Motion to Dismiss should be denied in its entirety.

25

Dated: November 20, 2025

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
ostrow@kolawyers.com

J. Gerard Stranch, IV (BPR 23045)
Grayson Wells (BPR 039658)
**STRANCH, JENNINGS
& GARVEY, PLLC**
223 Rosa L. Parks Ave., Ste. 200
Nashville, TN 37203
Tel: (615) 254-8801
Fax: (615) 255-5419
gstranch@stranchlaw.com
gwells@stranchlaw.com

Andrew J. Shamis
**SHAMIS & GENTILE P.A.**
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Tel: (305) 479-2299
ashamis@shamisgentile.com

*Pro hac vice

***Interim Co-Lead Counsel***

26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this day, November 20, 2025, the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send notification to all counsel of record.

*/s/ Jeff Ostrow*
Jeff Ostrow

27